UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL ALLEN GOSSARD,

       Petitioner,

                                        CASE NO. 05-CV-40267

v.                                JUDGE PAUL V. GADOLA

                                      MAGISTRATE JUDGE PAUL J. KOMIVES

THOMAS K. BELL[1],

       Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . 5
    C.   *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
            Claim II: *Violation of Michigan's Corpus Delicti Rule* . . . . . . . . . . . . . . . . . . . . . 6
    D.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    E.   *Claim I: Refusal to Define Larceny in the Instructions* . . . . . . . . . . . . . . . . . . 12
          1.   *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
          2.   *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
          3.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    F.   *Claim III: Failure to Sua Sponte Instruct on a Lesser Offense* . . . . . . . . . . . . 15
          1.   *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
          2.   *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          3.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    G.   *Claim IV: Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
          1.   *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
          2.   *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
          3.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    H.   *Claim V: Ineffective Assistance of Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . 22

---

   [1] By order entered this day, Thomas K. Bell has been substituted for Blaine Lafler as the proper Respondent.

          1.     *Inaccurate Advice as to the Plea Offer* . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
               a.. *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
               b.   *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
               c.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
          2.     *Failure to Impeach* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
               a.. *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
               b.   *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
               c.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
   I.   *Claim VI: The Admissibility of Petitioner's Statement* . . . . . . . . . . . . . . . . . . . 32
          1.     *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
          2.     *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
          3.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
   J.   *Claim VII: Penalizing Exercise of Right to Trial* . . . . . . . . . . . . . . . . . . . . . . 38
          1.     *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
          2.     *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
          3.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
   K.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
III.   <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u> . . . . . . . . . . . . . . . . . . . . . . . 41

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.     REPORT:

A.      *Procedural History*

        1.      Petitioner Daniel Allen Gossard is a state prisoner currently confined at the Carson City Correctional Facility in Carson City, Michigan.

        2.      On October 10, 2002, petitioner was convicted of first-degree home invasion, MICH. COMP. LAWS § 750.110a, following a jury trial in the Macomb County Circuit Court. On November 13, 2002, he was sentenced as a fourth offender, MICH. COMP. LAWS §769.12, to a term of 12 to 22 1/2 years' imprisonment.

        3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

        I.      THE TRIAL COURT'S FAILURE TO INSTRUCT APPELLANT'S JURY REGARDING LARCENY CONSTITUTES REVERSIBLE ERROR AS THIS FAILURE DENIED HIM A FAIR TRIAL.

        II.     THE ADMISSION INTO EVIDENCE OF THE APPELLANT'S STATEMENT VIOLATED THE CORPUS DELICTI RULE THEREBY REQUIRING THAT HE BE GRANTED A NEW TRIAL.

        III.    THE FAILURE TO INSTRUCT APPELLANT'S JURY REGARDING THE LESSER OFFENSE OF BREAKING AND ENTERING WITHOUT PERMISSION CONSTITUTES REVERSIBLE ERROR.

        IV.     APPELLANT IS ENTITLED TO A RE-SENTENCING BECAUSE THE TRIAL COURT BASED ITS SENTENCE UPON IMPERMISSIBLE CRITERIA THEREBY DENYING APPELLANT DUE PROCESS.

Petitioner filed a *pro per* supplemental brief, adding three additional claims:

        V.      THE ADMISSION INTO EVIDENCE OF APPELLANT[']S STATEMENT VIOLATED THE APPELLANT[']S 5TH AND 14TH AMENDMENT

3

RIGHTS UNDER THE UNITED STATES CONSTITUTION, THEREBY REQUIRING THAT HE BE GRANTED A NEW TRIAL.

VI.    THE EVIDENCE PRESENTED AT APPELLANT'S TRIAL WAS INSUFFICIENT TO CONVICT HIM OF FIRST DEGREE HOME INVASION.

VII.    APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL REQUIRED BY USCA [SIC] AMEND 6 WHERE REFUSAL OF PLEA BARGAIN OFFERED WAS BASED UPON INCORRECT ADVICE OF COUNSEL AND COUNSEL'S REFUSAL TO IMPEACH WITNESS DUE TO CONFLICTING TESTIMONY GIVEN.

Petitioner also filed a *pro se* motion to remand for an evidentiary hearing on the ineffective assistance of counsel issue which the court of appeals denied. *People v. Gossard*, No. 245180 (Mich. Ct. App. April 16, 2004). The court of appeals found no merit to petitioner's claims and affirmed his conviction and sentence. *People v. Gossard*, No. 245180, 2004 WL 1620849 (Mich. Ct. App. July 20, 2004) (per curiam) ("State Appeal").

4.    Petitioner, proceeding *pro se*, sought leave to appeal these same issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order on March 29, 2005. *People v. Gossard*, 472 Mich. 878, 693 N.W.2d 819 (2005).

5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on August 25, 2005. As grounds for the writ of habeas corpus, he raises the same issues, stated as follows:

I.    THE TRIAL COURT'S FAILURE TO INSTRUCT PETITIONER'S JURY REGARDING LARCENY CONSTITUTES REVERSIBLE ERROR AS THIS FAILURE DENIED HIM A FAIR TRIAL.

II.    THE ADMISSION INTO EVIDENCE OF THE PETITIONER'S STATEMENT VIOLATED THE CORPUS DELICTI RULE THEREBY REQUIRING THAT HE BE GRANTED A NEW TRIAL.

4

    III.    THE FAILURE TO INSTRUCT PETITIONER'S JURY REGARDING THE LESSER OFFENSE OF BREAKING AND ENTERING WITHOUT PERMISSION CONSTITUTES REVERSIBLE ERROR.

    IV.    THE EVIDENCE PRESENTED AT PETITIONER'S TRIAL WAS INSUFFICIENT TO CONVICT HIM OF FIRST DEGREE HOME INVASION.

    V.    PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL REQUIRED BY USCA [SIC] AMEND 6 WHERE REFUSAL OF PLEA BARGAIN OFFERED WAS BASED UPON INCORRECT ADVICE OF COUNSEL AND COUNSEL'S REFUSAL TO IMPEACH WITNESS DUE TO CONFLICTING TESTIMONY GIVEN.

    VI.    THE ADMISSION INTO EVIDENCE OF PETITIONER'S STATEMENT VIOLATED THE PETITIONER'S 5TH AND 14TH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, THEREBY REQUIRING THAT HE BE GRANTED A NEW TRIAL.

    VII.    PETITIONER IS ENTITLED TO A RE-SENTENCING BECAUSE THE TRIAL COURT BASED ITS SENTENCE UPON IMPERMISSIBLE CRITERIA THEREBY DENYING PETITIONER DUE PROCESS.

    6.    Respondent filed his answer on February 28, 2006.

B.    *Factual Background Underlying Petitioner's Conviction*

The Michigan Court of Appeals summarized the factual background of this case as follows:

    Cheryl Gorman was sitting in a back bedroom in her home watching television when someone began knocking on her front door and ringing her doorbell. Gorman looked through the peephole of the door and saw defendant. Because she did not know defendant, she did not open the door. Gorman watched defendant as he looked both ways down the street and put on a pair of gloves. Defendant then grabbed the storm door, which was locked, and pulled it open, breaking the lock in the process. As defendant used his body in an attempt to break down the steel front entry door, Gorman locked herself in the bathroom and called 911. From the bathroom, Gorman heard defendant trying to break down the front door and then heard a crash from somewhere else in the house. The police then arrived and arrested defendant outside of Gorman's house. The police found a pair of gloves in defendant's pocket. Defendant told police that he had a crack problem and that he did not know anyone at the home.

Upon inspection of the house, it was discovered that the screen to the kitchen window had been pried off, the window had been broken, the latching device had been broken off the window frame, and the window treatments had been knocked down. The window frame had been pushed in approximately six or seven inches, knocking to the floor a number of knickknacks that had been sitting on the windowsill. The lock on the front storm door was broken and there was structural damage to the steel front entry door.

The next day, defendant gave a written statement to the police admitting that he attempted to break into Gorman's house to get money for drugs. Defendant denied having the intent to harm anyone inside the house. Before trial, defendant filed a motion for a Walker hearing, seeking to suppress his written statement on the ground that the statement was not voluntary because he was coerced into giving the statement by a promise of leniency. After an evidentiary hearing, the trial court denied defendant's request to suppress the statement, finding that defendant had given a knowing, intelligent, and voluntary waiver of his rights before making the statement.

State Appeal, pp. 1-2, 2004 WL 1620849*1 (footnote omitted).

C.      *Procedural Default*

*Claim II: Violation of Michigan's Corpus Delicti Rule*

 Respondent  contends that petitioner's second claim is procedurally defaulted.  The Court should agree.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  Procedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an "adequate and independent" state ground foreclosing review of a federal constitutional claim.  *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir.2003); *Maupin v. Smith*, 785 F.2d

6

135, 138 (6th Cir.1986). A procedural default does not bar consideration of a federal claim on habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on the procedural bar. *Harris v. Reed*, 489 U.S. 255, 263 (1989). Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)). For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004).

In his second claim, petitioner argues that the introduction of his confession into evidence without independent evidence of an intent to commit a larceny violated Michigan's corpus delicti rule and denied him fundamental fairness. He did not object to the introduction of his confession on this ground at trial. The Michigan Court of Appeals, in the last explained state court judgment, expressly found that the issue was not preserved and reviewed for plain error.[2] Michigan's contemporaneous objection rule requires defendants to preserve issues for appellate review by first objecting in the trial court, *see People v. Carines,* 460 Mich. 750, 761-65, 597 N.W.2d 130 (1999). It is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors, *see Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir.2003). Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

A petitioner may avoid this procedural default only by showing that there was cause for the

---

[2] The court concluded that petitioner's statement was properly admitted to establish his intent and that there was not a plain error. State Appeal, pp. 4-5, 2004 WL 1620849*3-4.

default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced. See *Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir.2005). Petitioner has failed to argue any cause for his default to this court.

In the absence of cause and prejudice, a petitioner may demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice. A fundamental miscarriage of justice results from the conviction of one who is "actually innocent." *Murray*, 477 U.S. at 496. A claim of actual innocence can be raised to avoid a procedural bar to the consideration of the merits of constitutional claims. *Schlup v. Delo*, 513 U.S. 298, 326-327 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, 477 U.S. at 496. The actual innocence claim is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup*, 513 U.S. at 315 (citation omitted). The threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*., 317. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable

8

evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Id.*,324. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.*, 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, (1998). Petitioner has made no claim of actual innocence nor presented any new evidence of innocence.

For these reasons, the court should find that petitioner's second claim is procedurally defaulted.[3]

---

[3] Nor could petitioner have succeeded if this claim had been preserved. Michigan's corpus delicti rule was developed in homicide cases to guard against conviction of a criminal homicide where none was committed, *People v. Williams*, 422 Mich. 381, 388, 373 N.W.2d 567 (1985). In the context of crimes other than homicide the purpose of the rule is to prevent a defendant's confession from being used to convict him of a crime that never happened. *People v. Cotton*, 191 Mich. App. 377, 389, 478 N.W.2d 681 (1991). This procedural safeguard requires the prosecution to show "that the specific injury or loss has occurred and that some person's criminality was the source or cause of the injury" in order to admit a defendant's confession. *Id.* Once this showing has been made, "[a] defendant's confession then may be used to elevate the crime to one of a higher degree or to establish aggravating circumstances." *Cotton* at 389. *See also, People v. Ish*, 252 Mich. App. 115, 116-117, 652 N.W.2d 257 (2002). Id. The order of proof may be discretionary. *People v. Lewis*, 31 Mich. App. 433, 436, 188 N.W.2d 107 (1971).

Michigan's corpus delicti rule is a state court rule only. It has no independent constitutional basis and is not constitutionally mandated. See *Williams v. LeCureaux*, 9 F.3d 111, 1993 WL 445090,*1 (6 th Cir. Nov. 2, 1993) (unpublished); accord *Lucas v. Johnson*, 132 F.3d 1069, 1077 (5 th Cir.1998). Errors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus. *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.1983). Only errors of state law that result in a denial of fundamental fairness in violation of due process are cognizable in federal habeas corpus proceedings. *Id.* *See also, Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). If there was a risk that petitioner was convicted of a crime that did not happen it could be said that he was denied fundamental fairness, but the testimony of the complainant and the officers who responded to the scene independently established that petitioner committed a breaking and entering.

D.   *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

10

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v.*

*Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.     *Claim I: Refusal to Define Larceny in the Instructions*

Petitioner claims that the trial court's refusal to instruct on the elements of larceny, where an intent to commit a larceny was an element of home invasion in the first degree, lessened the prosecution's burden of proof and denied him a fair trial in violation of the Fourteenth Amendment.

1.     *Background*

The trial court instructed the jury on home invasion in the first degree, including that one of the elements is that "when defendant broke and entered the dwelling he intended to commit a larceny." The Court further instructed that the prosecutor was required to prove the specific intent "that the defendant intended to enter the home and commit a larceny" and that "[t]he defendant's intent may be proved by what he said, what he did, how he did it, or any other facts and circumstances." (10/10/02 Trial Transcript, p. 48-49). The court also instructed on the lesser included offense of attempted home invasion in the first degree, including that the prosecutor had to prove the specific intent "that the defendant intended to commit the home invasion and the larceny once entry was secured." (10/10/02 Trial Transcript, p. 48-49).

At this point, defense counsel asked to approach and a bench conference was held. The trial court completed the instructions and then a record was made. Defense counsel stated that he had objected at the bench to the trial court's failure to instruct on the elements of larceny. The court complained that defense counsel had not made a request during their earlier discussion of the instructions; defense counsel responded that he had. The prosecutor argued that further instruction was not necessary and the court denied the request.

12

The Michigan Court of Appeals rejected petitioner's claim that this was error or that he was denied a fair trial:

> Defendant argues that he was denied a fair trial when the trial court refused to define larceny as part of the instruction for first-degree home invasion. We disagree. The trial court instructed the jury on all of the elements of first-degree home invasion. However, the court refused to elaborate on the intent to commit larceny element of the crime. Our Supreme Court has held that where intent to commit larceny is an element of the crime, a trial court need not instruct the jury regarding the definition of larceny where the evidence negates any inference that larceny was not intended. *People v. Petrosky*, 286 Mich. 397, 401-402; 282 N.W.2d 191 (1938); see also *People v. Rabb*, 112 Mich. App. 430, 435-436; 316 N.W.2d 446 (1982). In *Petrosky*, *supra* at 401-402, the defendant challenged only that he was present at the time and place charged, so it was not error for the trial court to fail to define the larceny element of the crime of breaking and entering with intent to commit larceny.
>
> Here, defendant similarly did not contest the intent to commit larceny element of the crime. At trial, the prosecution introduced defendant's statement where he admitted having the intent to steal, explaining, "I only wanted something to pawn for drugs." Defendant never asserted that he had permission to enter Gorman's home, or otherwise contested the larceny element of the charge. Instead, defendant argued that he was misidentified as the person who broke into Gorman's home, and that the prosecution failed to establish the breaking and entering elements of the crime. Because defendant did not challenge the intent to commit larceny element of the crime, we conclude that the trial court's failure to explicitly define larceny for the jury was not error. *Petrosky*, *supra* at 401-402.

State Appeal, pp. 5-6, 2004 WL 1620849*5.

Respondent incorrectly characterizes petitioner's claim as a failure to instruct on a lesser included offense and argues that Supreme Court precedent does not require instructions on lesser included offenses in non-capital cases.

2.   *Applicable Law*

Errors in jury instructions in a state criminal trial generally are not reviewable in habeas corpus proceedings unless they deprived the defendant of a fundamentally fair trial and due process of law. *See Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  To make out a due process violation,

a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned.  In conducting habeas review, the question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  Ambiguous and potentially erroneous instructions are reviewed to determine whether there is a reasonable likelihood that the jury applied the instructions in a way that violates the Constitution. *See Estelle* at 72 (1991).

Most instructional error, including a failure to instruct on an element of the offense, is subject to harmless error analysis. *See Mitchell v. Esparza,* 540 U.S. 12, 16 (2004); *Neder* v. *United States*, 527 U.S. 1, 19 (1999).  On habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993).  The reviewing court must treat an error as if it had a substantial and injurious effect when the court has a grave doubt and finds itself in virtual equipoise as to the harmlessness of the error. *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155.

3.    *Analysis*

The trial court did instruct the jury that it had to find beyond a reasonable doubt that petitioner had an intent to commit a larceny when he entered the home.  Petitioner has not shown that he was denied due process by the refusal  to further instruct the jury on the elements of larceny.

According to Michigan law the elements of larceny are:  "(1) an actual or constructive taking of goods or property, (2) a carrying away or asportation, (3) the carrying away must be with a felonious intent, (4) the subject matter must be the goods or personal property of another, (5) the

14

taking must be without the consent and against the will of the owner." *People v. Cain*, 238 Mich. App. 95, 120, 605 N.W.2d 28 (1999) (citation omitted).  The felonious intent required for larceny is an intent to permanently deprive the owner of his property. *People v. Goodchild*, 68 Mich. App. 226, 232, 242 N.W.2d 465 (1976).

None of these elements had any bearing on the issues or evidence at petitioner's trial. The theory of the defense was that petitioner abandoned his efforts after trying to force open the front door and that the prosecution failed to prove beyond a reasonable doubt either an entry or that it was actually petitioner who pushed in the window.  The only evidence at trial on the issue of intent was petitioner's statement to the police that he intended to get something to pawn for drugs.  There was no contrary evidence supporting an inference that  petitioner had an innocent intent or a different culpable intent and the defense made no argument to that effect.  Nor did the defense  argue to the jury that this element of intent was not established.  Larceny is a commonly understood term and there  is no reason to assume that the jury was confused or misled.  It is inconceivable that instruction on the elements of larceny would have affected the verdict.

F.      *Claim III: Failure to Sua Sponte Instruct on a Lesser Offense*

Petitioner claims that the trial court 's failure to to *sua sponte* instruct on the necessarily lesser included offense of breaking and entering without permission denied him his constitutional right to a fair trial.

1.      *Background*

The trial court instructed the jury on the charged offense of home invasion in the first degree and the lesser included offense of attempted home invasion in the first degree.  There was no request for an instruction on breaking and entering without permission.  The Michigan Court of Appeals

15

found that the issue was not preserved and reviewed it under a plain error standard and concluded

that there was no error:

> Defendant also argues that the trial court erred in failing to sua sponte instruct the jury on breaking and entering without permission. Breaking and entering without permission is a necessarily included lesser offense of first-degree home invasion, the crime for which defendant was charged and convicted. *People v. Silver*, 466 Mich. 386, 392; 646 N.W.2d 150 (2002). "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v. Cornell*, 466 Mich. 335, 357; 646 N.W.2d 127 (2002). "Breaking and entering without permission requires (1) breaking and entering or (2) entering the building (3) without the owner's permission." *Id* . First-degree home invasion is distinguished from breaking and entering without permission "by the intent to commit 'a felony, larceny, or assault,' once in the dwelling." *Id.*

> Here, as discussed in Part C(1) of this opinion, there was not a legitimate dispute at trial over defendant's intent to commit larceny. Because the charged greater offense (first-degree home invasion) did not require the jury to find a disputed factual element (intent to commit larceny) that is not part of the lesser included offense (breaking and entering without permission), the trial court did not err in failing to sua sponte give the jury an instruction on breaking and entering without permission. *Cornell, supra* at 357.

State Appeal, p.6, 2004 WL 1620849*5.

Respondent argues that petitioner has raised a perceived error in state law which is not

cognizable on federal review and that there has been no constitutional violation.[4]

2.     *Applicable Law*

Although the Supreme Court has held that it is a violation of due process for a court to fail

to instruct on a lesser included offense supported by the evidence in a capital case, *Beck v. Alabama*,

---

[4] The respondent does not raise the doctrine of procedural default as a defense to this claim. Procedural default is not a jurisdictional matter and therefore is normally a defense that the State is obliged to raised. *Trest v. Cain*, 522 U.S. 87, 89 (1997); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir.2005). While the federal habeas court can raise procedural default *sua sponte*, it should not do so as a matter of course. *Id*. Accordingly, the merits of petitioner's claim are being addressed.

447 U.S. 625, 627 (1980), it has not so held in noncapital cases. The Sixth Circuit has interpreted *Beck* to mean that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir.2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-797 (6th Cir.1990). *Bagby* recognized that this claim might be cognizable upon federal habeas corpus review "where a fundamental miscarriage of justice is found to have resulted from the arbitrary and unsupportable denial of a lesser included offense instruction in clear defiance of state law." *Id*. at 795. The Supreme Court has made it clear that the fact that an instruction was allegedly incorrect under state law is not a basis for habeas relief unless the instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. at 71-72.

   3.  *Analysis*

  Petitioner had no federal constitutional right to instruction on a lesser included offense. The decision of the Michigan Court of Appeals that petitioner was not entitled to an instruction on breaking and entering without permission under Michigan law is not reviewable in habeas corpus proceedings. *Estelle v. McGuire*, *supra.* Nor was the court's application of the law arbitrary or without support. It applied settled Michigan authority governing instruction on lesser included offenses and the record supports the court's conclusion that the element of intent to commit a larceny was not contested at trial. Furthermore in light of the evidence that petitioner admitted that he intended to commit a larceny he cannot show that the denial of the instruction resulted in a fundamental miscarriage of justice.

G. *Claim IV: Sufficiency of the Evidence*

  Petitioner claims that the prosecution failed to prove his guilt beyond a reasonable doubt as

is constitutionally mandated.

    1.    *Background*

    During trial petitioner moved unsuccessfully for a directed verdict, arguing that there was no evidence that he entered the complainant's home and/or no evidence that it was petitioner who pushed in the window.  On the question of entry, the prosecutor argued that the evidence showed that the window had been pushed in thereby establishing that part of petitioner's body had entered the home.  On the question of whether it had shown that  petitioner pushed in the window, the prosecution pointed to the evidence that complainant heard the crash that corresponded to the pushing in of the window just after she saw petitioner trying to break in the front door and shortly before the police found petitioner at the scene.  The trial court reviewed photographs of the window that had been introduced into evidence, the testimony of the evidence technician that this sliding window had been pushed seven to nine inches into the house and the testimony of the complainant that she could not move the window back into position.  It concluded that a continuous force pushed the window and that some portion of petitioner's body, "presumably his hands because he was wearing gloves," entered the building.  (10/10/02 P.M. Trial Transcript, pp. 71-73).  The court did not  address the second part of petitioner's argument.

    The Michigan Court of Appeals similarly rejected petitioner's claim that there was insufficient evidence to establish the element of entering the building:

>  Defendant argues that there was insufficient evidence to support his conviction for first-degree home invasion. In reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v. Nowack*, 462 Mich. 392, 399, 400; 614 N.W.2d 78 (2000). We must draw all reasonable inferences and make credibility choices in support of the jury verdict. *Id.* at 400. " 'Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof

of the elements of a crime." ' *Id.*, quoting *People v. Carines*, 460 Mich. 750, 757; 597 N.W.2d 130 (1999).

***

Defendant argues that the evidence was not sufficient to prove that he entered the dwelling. We disagree. "It is a well established doctrine that '[w]here an entering is a necessary element of the offense, it is sufficient if any part of defendant's body is introduced within the house.'" *People v. Gillman*, 66 Mich. App. 419, 429-430; 239 NW2d 396 (1976), quoting 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1133, p 1528. There is evidence that the window to the house had been broken and the window frame pushed in approximately six or seven inches. As a result, the latching device had been broken and the items behind the window had been knocked off the windowsill. The window treatments had also been knocked to the floor. From this evidence, a reasonable juror could infer that defendant put part of his body into the house during his attempt to break in. Therefore, there was sufficient evidence to prove that defendant entered the dwelling and was guilty of first-degree home invasion.

State Appeal, pp.2-3, 2004 WL 1620849*1-2. The court did not address petitioner's further claim that there was insufficient evidence that it was he who pushed in the window.

In his petition, petitioner again argues that there was no evidence as to how the window was pushed in and no evidence that it was he who pushed it. On this latter point, he argues that the complainant's testimony that she heard petitioner trying to break down the front door at the same time she heard the crash shows that it could *not* have been petitioner. Respondent answers that the Michigan Court of Appeals reasonably applied established federal law in deciding that the evidence was sufficient.

2.      *Applicable Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). A district court may grant a writ of habeas corpus based on insufficiency of the evidence only where it finds that after viewing

19

the evidence in the light most favorable to the prosecution no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Contrary to one of petitioner's arguments, the fact that the Michigan Court of Appeals did not cite *Jackson* is irrelevant, *see Early v. Packer*, 537 U.S. at 8; petitioner must show that the result was contrary to or an unreasonable application of *Jackson. See Williams*, 529 U.S. at 409-11.

This *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16; *see also Brown v. Palmer,* 441 F.3d 347, 351 (6th Cir. 2006). What is essential to establish an element, like the question whether a given element is necessary, is a question of state law. *Sanford v. Yukins*, 288 F.3d 855, 861(6th Cir. 2002), quoting *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir.1991). Factual findings made by the state court are presumed correct in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume-- even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir.1983) (quoting *Jackson*, 443 U.S. at 326).

Where a claim is fairly presented in state court but the state court, although denying the claim, fails to address it, a federal court on habeas review must conduct an independent review of the state court's decision. *Harris v. Stovall*, 212 F.3d 940 (6th Cir.2000). This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 943. However

the independent review "is not a full, de novo review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.*

    3.    *Analysis*

Neither the trial court nor the Michigan Court of Appeals addressed petitioner's claim that the evidence was insufficient to prove that it was he who pushed in the window.  A review of the record shows that while no one saw petitioner push the window, he was clearly and admittedly the person who was at that time trying to break into the complainant's house through the front door.  It is highly improbable that anyone else not connected to petitioner's endeavor would independently and almost simultaneously be attempting the same crime through the front window.  Contrary to petitioner's allegation, the complainant's testimony does not establish that it could not have been petitioner who damaged the window.  She did not testify  that she heard both petitioner pounding on the front door and the crash from the window at the exact same moment.   To the contrary she testified that the noises at the front door had stopped when she heard the crash.  (10/9/02 A.M. Trial Transcript, p. 35).  Considering the evidence it cannot be said that the rejection of this claim by the Court of Appeals was  contrary to or an unreasonable application of federal law or that it was based on an unreasonable determination of the facts.

On the question of the sufficiency of the evidence of entry,  it is settled law in Michigan that entering is an element of home invasion and that this element is satisfied if it is proven that any part of the accused's body entered the premises.  "[I]f a defendant were to stick his arm through a window, this would constitute an entry." *People v. Gillman*, 66 Mich. App. at 430. The question on habeas review thus is whether the decision of the Michigan Court of Appeals that the evidence was

sufficient for a rationale trier of fact to conclude beyond a reasonable doubt that any part of petitioner's body (probably his hand) entered the building was reasonable.  The court should conclude that it was. The evidence that the window was pushed inside some seven inches, knocking over the knicknacks on the sill and knocking down the curtains, adequately supports the inference that part of petitioner's body entered the home as he pushed the window.

H.      *Claim V: Ineffective Assistance of Trial Counsel*

Petitioner claims that he was denied his Sixth Amendment right to the effective assistance of counsel when  1) counsel gave petitioner inaccurate advice as to the value of a plea offer thereby convincing petitioner to reject the offer, and 2) counsel failed to impeach the complainant with a prior inconsistent statement.

1.      *Inaccurate Advice as to the Plea Offer*

a..      *Background*

The prosecutor offered petitioner a minimum sentence cap of either 84 or 89 months if petitioner pled as charged as a fourth offender, an offer that petitioner rejected.  The record indicates that neither defense counsel nor petitioner thought that this was a very generous offer.  At the sentencing proceeding, defense counsel stated that:

> Judge, in this situation we really had no alternative but to go to trial.  There was an offer, a marginal offer of putting the plea on a habitual fourth and capping the minimum sentence of 84 months.  But I thought, you know, Mr. Gossard was entitled to a better plea offer and we talked about it and we decided to go to trial. (Sentencing Transcript, p. 13).

Defense counsel also indicated that the sentencing guidelines for home invasion in the first degree as a fourth offender were 72 to 240 months. (Sentencing Transcript, p.15).

The trial court also referenced the offer at sentencing.  After reviewing petitioner's extensive

22

record, failures at drug rehabilitation and repeated victimization of others to support his drug habit, the Court explained that now it did not think that even the recommended 10 year minimum sentence would be an adequate sentence:

> THE COURT: And I recognize that, and Mr. McQueeney pointed out, that the plea offer was, what, 84 months at one time?
>
> MS. BRUDER [the prosecutor]: Yes your Honor.
>
> THE COURT: Was not acceptable.
>
> And now I've had the victim have to relive her experience as a result of your right to your trial and you've had your right to your trial. And I don't think 10 years is enough. The recommendation is 10 years. (Sentencing Transcript, pp. 22-23) (bracketed material added).

The court then imposed a sentence of 12 to 22 ½ years.

In the Michigan Court of Appeals petitioner filed a *pro per* supplemental brief raising his claims of ineffective assistance of counsel and a motion to remand for an evidentiary hearing. Petitioner attached his affidavit stating that he had been offered a minimum sentence cap of eighty nine months[5] if he pled guilty as charged but that he had refused the plea because his attorney advised him that 1) the trial court would not penalize him for going to trial by giving him more than eighty nine months and 2) the prosecution had no evidence of "entry" and petitioner could therefore not be convicted of first degree home invasion. Petitioner also attached a letter to petitioner from his trial counsel, dated December 4, 2003, apparently responding to petitioner's request for assistance in pursing his appellate claims. Pertinent to the question of whether counsel had promised petitioner that the judge would not penalize him for going to trial, counsel wrote that he had told petitioner

---

[5] There is obviously a discrepancy as to the length of the minimum sentence offered but there is no need to resolve this.

during discussions of the plea offer that he "did not believe" that the judge would penalize him but that he had not guaranteed petitioner that the judge would sentence him after trial to the same 84 months in the plea offer.   Pertinent to  the question of whether petitioner rejected the plea because counsel had informed him that he could not be convicted of first degree home invasion, counsel wrote that:

> It was our decision to proceed with the trial as you did not want to serve a minimum of 84 months before you could become eligible for parole. We felt our only defense was that you would be convicted of the lesser offense of Attempted Home Invasion, which would have certainly affected your guidelines and would have allowed you to serve a lesser sentence.  We each came to the conclusion to proceed with the trial, as you would not agree to the 84-month minimum sentence...
>
> It was going to be a difficult task at the time of trial, but given the fact that the prosecutor wanted a minimum of 84 months, which is the equivalent of 7 years, you felt you wanted to take your chances to see if the jury would convict you of the lesser offense of attempted home invasion.  I felt that the proofs were sufficient enough to find you guilty of the lesser offense of Attempted Home Invasion, as there was no evidence to suggest that any part of body or anything attached to you entered the private dwelling, only that the window was broken.  In short, there was only proof that you broke the window, but nothing else.  Certainly, a directed verdict as to an attempted home invasion would have been appropriate and I do not know if Judge Servitto's denial of the directed verdict would be grounds for an appeal.

The Court of Appeals denied the motion to remand, *People v. Gossard,* No. 245180  (Mich. Ct. App. April 16, 2004), and reviewed the issue on the existing record.  It found that the record did not support petitioner's claim that counsel had been ineffective.  Its analysis included that:

> [T]here is no evidence on the record to support defendant's claim that his trial counsel informed him that there was no evidence to support a conviction for first-degree home invasion or that defendant would not be sentenced to more than eighty-nine months' imprisonment if he went to trial and was convicted. Nor is there any indication that trial counsel failed to sufficiently explain to defendant the options regarding the plea bargain to the extent that defendant could not make an informed decision. Instead, the only reference to the matter on the record was at sentencing, where counsel indicated that he and defendant had discussed the matter, decided that defendant was entitled to a better plea offer, and decided to go to trial. This demonstrates that it was counsel's

24

strategy for defendant to go to trial rather than plead guilty. This Court will refrain from second-guessing trial strategy. Counsel's incorrect prediction concerning the defendant's sentence is not enough to support a claim of ineffective assistance of counsel.

State Appeal, pp.7-8, 2004 WL 1620849*6-7  (citations omitted).

Although petitioner has not specifically moved for an evidentiary hearing in this court, he makes the same factual representations that were in his affidavit, he references counsel's letter in support of those allegations and his requests for relief include "such other relief as this Court may deem proper." Petition for Writ of Habeas Corpus, 3rd page.  Respondent answers that even considering the contents of the trial attorney's letter, petitioner has not made out an unreasonable application of the controlling federal law.

　　　　b.　　*Applicable Law*

To establish a violation of the right to effective assistance of counsel, petitioner  must satisfy two components.  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  To demonstrate that counsel's performance was deficient, petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  To demonstrate prejudice,  he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*   Judicial review of counsel's performance must be highly deferential, with "a

25

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Id.* at 689. The defendant must overcome the presumption that the challenged action or inaction "might be considered sound trial strategy." *Id.* (citation omitted). Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact entitled to de novo review. *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir.2000).

The *Strickland* standard applies to claims of ineffective assistance of counsel involving counsel's advice offered during the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A petitioner who claims that his counsel's misadvise led him to reject a plea offer must prove both deficient performance on the part of his counsel and that but for his counsel's advice there is a reasonable probability that he would have pleaded guilty. *Magana v. Hofbauer*, 263 F.3d 542, 547-548 (6th Cir. 2001); *Turner v. Tennessee*, 858 F.2d 1201, 1206 (6th Cir.1988), *vacated on other grounds*, 492 U.S. 902 (1989), *reinstated on other grounds,* 940 F.2d 1000 (1991).

The decision whether to plead guilty or go to trial is ordinarily the most important decision in any criminal case. *See Boria v. Keane*, 99 F.3d 492, 496-497 (2nd Cir. 1996). Accordingly "[a] defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable." *Id.* (quoting ABA's Model Code of Professional Responsibility, Ethical Considerations 7-7 (1992)). In *Smith v. United States*, 348 F.3d 545, 552-553 (6th Cir.2003),the Sixth Circuit elaborated on counsel's obligations in the context of a guilty plea offers:

> Smith contends that his attorney was ineffective because, in light of the overwhelming evidence of guilt, the attorney did not insist that Smith plead guilty and accept the twenty-month plea bargain. We do not believe this to be a proper basis upon which to find deficient performance by defense counsel. The decision to plead guilty--first, last, and always--rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate

26

consequence of a conviction.

On the other hand, the attorney has a clear obligation to fully inform her client of the available options. We have held that the failure to convey a plea offer constitutes ineffective assistance, *see Griffin [v. United States*], 330 F.3d [733] at 734 [(6th Cir.2003)], but in the context of the modern criminal justice system, which is driven largely by the Sentencing Guidelines, more is required. A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available... The criminal defendant has a right to this information, just as he is entitled to the benefit of his attorney's superior experience and training in the criminal law.

A district court must presume that a state court's determination of factual issues is correct unless the petitioner can rebut that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

      c.   *Analysis*

Petitioner's claims are largely based on factual allegations that are not part of the record. While petitioner has not specifically moved for an evidentiary hearing in his *pro per* petition, the court nonetheless has discretion to order one.  *See* Rule 8(a) of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254.   A determination must thus be made whether an  evidentiary hearing is permissible under 28 U.S.C. § 2254(e)(2) and necessary under Rule 8.

A hearing is  not precluded in this case.  Federal courts cannot grant evidentiary hearings to petitioners who have "failed to develop the factual basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2).  The Supreme Court has explained that "a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Michael Williams v. Taylor*, 529 U.S. 420, 432 (2000).  The Sixth

Circuit has directed that "[A] finding of diligence would 'depend[ ] upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court.' " *Sawyer v. Hofbauer,* 299 F.3d 605, 610 (6th Cir.2002) (citing Williams, 529 U.S. at 435, 120 S.Ct. 1479).   Because petitioner did properly request an evidentiary hearing with the supporting documentation in the state court, he has met his burden under 28 U.S.C. § 2254(e)(2). *See Bowling v. Parker*, 344 F.3d 487, 511-512 (6th Cir. 2003).

In making the determination of whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn,* 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)).   The court may conduct an evidentiary hearing only if the facts underlying the claim, if true, would establish a constitutional error. *Sawyer v. Hofbauer*, 299 F.3d at 610.  If the existing record is factually adequate for review, a hearing is not necessary, *see Sanborn v. Parker,* 289 F.Supp.2d 828, 847 (W.D.Ky.,2003).  Likewise,  no hearing is required if the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo* v. *United States*, 178 F.3d 778, 782 (6th Cir.1999) (internal quotation omitted).

Petitioner's allegation that he rejected the plea offer because defense counsel told him that there was no evidence of entry and that he therefore could not be convicted of home invasion in the first degree is belied by the record.   At the preliminary examination defense counsel argued on the record that in order to establish the element of entry the prosecution had to introduce evidence that some part of petitioner's body, such as "a hand or an implement being held by the defendant" entered

28

into the home.  He further argued that this had not been established and that petitioner could be bound over on no more than attempt.  The prosecutor responded that there was circumstantial evidence of entry, including that the window was pushed in and that the curtains and the knickknacks on the sill were knocked down.  The district judge stated that it was a question of fact and bound the case over on the original charge.   The defense filed a motion to quash in the circuit court.  The defense arguments included that  no one saw petitioner in the residence.  The court denied the motion, finding on the record that there was sufficient evidence of entry introduced at the preliminary examination: "Circumstantially the police officer did testify that there were items within the structure that could not have been knocked over or disturbed had there not been a form of entry and that being the testimony it's adequate..." (9/3/02 "Proceedings" Transcript, p. 8).  In other words, defense counsel and petitioner (who was present at these proceedings) clearly knew that the prosecution had circumstantial evidence of entry that was legally sufficient to satisfy that element.

Nor would a hearing advance petitioner's claim that his attorney advised him that the trial judge would not penalize him for going to trial by giving him a minimum sentence greater than that in the plea offer.  According to the letter from counsel that petitioner has submitted, counsel's recollection is that after consulting with his colleagues he advised petitioner that he did not believe that Judge Servitto would penalize him for going to trial.  This advise is not incompetent.  As a matter of law, a trial court is not allowed to penalize a defendant for exercising his right to trial."The trial court must not penalize the defendant for exercising his constitutional right to plead not guilty and go to trial; whether or not the defendant exercises his right to trial must have no bearing on the sentence he receives." *United States v. Harris*, 635 F.2d 526, 529 (6th Cir. 1980).  *See also North Carolina v. Pearce*,  395 U.S.711, 738 (1969).  Counsel was simply making his best prediction as to

how Judge Servitto would react.  He denied that he promised petitioner that the judge would give him no more time than the plea bargain offered, and petitioner's claim that he relied on such a promise is inherently incredible:  petitioner  has been through the criminal justice system several times and would have been aware that a defense attorney cannot bind a judge to a certain sentence.  The failure of defense counsel to predict accurately the sentence that was imposed does not constitute defective performance.  See, e.g., *Sullivan v. United States*, 11 F.3d 573 (6th Cir.1993) (no defective performance found where petitioner claimed his counsel was ineffective for failing to explain that the government was under no obligation to agree to a downward departure based on substantial assistance).

The plea that was offered,  to the original charge as a fourth offender with a sentence within the sentencing guidelines, was not particularly generous.   The evidence on the element of entry was minimal albeit sufficient and there was a possibility that petitioner would have been found guilty of no more than an attempted home invasion.  It is easy to understand how both counsel and petitioner would decide that the risks of going to trial were minimal and how both were surprised by the severity of the sentence imposed after trial.  This however does not show  that counsel's advise was incompetent.   Making a record of the contents of petitioner's allegations and defense counsel's responses would not advance petitioner's claims and an evidentiary hearing is therefore not necessary.

    2.    *Failure to Impeach*

        a..    *Background*

Petitioner claims that the complainant's testimony at the preliminary examination that she had to use a hammer to close her front door after petitioner tried to break in was inconsistent with her trial

testimony that she had to use a hammer to close her front window after it was pushed in, and that defense counsel was ineffective for not questioning her about the alleged inconsistency. The Michigan Court of Appeals reviewed the record and found that when read in context there was no inconsistency. The court further held that decisions whether to question witnesses are presumed to be trial strategy, that the strategy that counsel employed here was to argue that no one saw petitioner break the window or enter the house, and that the questioning petitioner claims counsel should have pursued would not have furthered this strategy and would simply have focused the jury on the substantial damage to the window "making it more probable that the jury would find that defendant had used force sufficient to constitute an entry." State Appeal, p.8, 2004 WL 1620849*7.

b.  *Applicable Law*

Under *Strickland*, petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. A petitioner's challenge to tactical decisions must overcome a presumption that the challenged action might be considered sound trial strategy. *Darden v. Wainwright*, 477 U.S. 168, 185-87 (1986). "[C]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F.Supp.2d 629, 651 (E.D.Mich.2002). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id*.

c.  *Analysis*

Petitioner has neither shown deficient performance nor prejudice. At the preliminary examination the complainant testified that after petitioner damaged her storm door, it was "out of whack" and she had to use a hammer to close it. (Preliminary Examination Transcript p. 12). At trial

31

she testified that after the police left, she tried unsuccessfully to push the window back into the frame and considered and decided against using a rubber mallet on it.   There is no apparent inconsistency, no apparent strategical reason to explore one, and certainly no possibility that such exploration would have led to a different result at trial.

I.      *Claim VI: The Admissibility of Petitioner's Statement*

Petitioner claims that his statement to the police was not voluntarily made and that its admission at trial violated his rights under the Fifth and Fourteenth Amendments.

1.      *Background*

The statement at issue was introduced at trial through the testimony of Detective Knoblauch, who conducted the interrogation, and is as follows:

> I tried to break into a home.  I had no idea anyone was home.  After I thought about what I was doing I want to leave not wanting to do it, that was when I noticed the police.  I did not intend to cause anyone bodily harm or physically harm anyone.  I only wanted something to pawn for drugs. (10/9/02 P.M. Transcript, p. 53).

Petitioner's only challenge to the voluntariness of the statement is that Detective Knoblauch

> mislead him by telling him that the difference between being charged with a violent assaultive crime and a non assaultive crime depended on the police and the home owner's belief as to what the Petitioner's intent was.  Detective Knoblauch made it perfectly clear that Petitioner's prior record combined with the fact that they believe that his intent was to gain entry to rape or kill the home owner would get him locked up for a long time, and that if Petitioner wrote the statement indicating he was trying to gain entry to steal something he would not have to worry about any charges entailing assaultive elements.  Petitioner's only concern was that he not be charged with a crime that accused him of attempting to rape or kill someone.

Memorandum of Law in Support of Petition for Writ of Habeas Corpus, p. 26.   Petitioner further argues that he initially wrote out the statement without the last sentence, but that the detective  told him that "he had to write that he was trying to steal something for drugs" because "Petitioner had to convince the home owner and police that he wasn't [sic] trying to rape or kill her."  *Id.*, pp. 26-27.

32

Petitioner also claims that Knoblauch admitted the coercion in his testimony at trial and at the preliminary examination.

Petitioner unsuccessfully challenged the voluntariness of the statement at a pretrial Walker hearing.   At the hearing, Detective Knoblauch testified that he questioned petitioner at the jail at around 1:00 p.m. after giving him Miranda warnings.  Petitioner had been in custody almost 24 hours and the detective had no reason to believe that petitioner had ingested drugs or alcohol or that he had not been offered the regularly scheduled meals.  When asked if he had told petitioner that he should write out that he was intending to steal if he was not intending to sexually assault or harm the complainant, Knoblauch responded:

> "I advised Mr. Gossard that I would be going to the victim and I would be getting her side of the story and expressing whatever he tells me.  If he says that I was going there to steal property, I would let her know that.  She was in fear that he knew that she was in the house alone, and he denied that, and I told him he had an opportunity to write out his side of the story.  If he wasn't going in there to hurt her, that's fine.  If he wants to write it down, write down his side of the story. (9/3/02 "Proceedings" Transcript, p. 21).

Petitioner also testified at the Walker hearing.  He did not contest that he had been given Miranda warnings and acknowledged that he had not requested counsel.  He did testify that he told Knoblauch that he did not wish to say anything[6] and that Knoblauch responded that he thought petitioner was trying to break into the house to sexually or physically assault the complainant. Particularly because he was "already a two time loser" (9/3/02 "Proceedings" Transcript, p. 21), this

---

[6] Despite this testimony, petitioner never argued that his right to remain silent was violated when questioning continued.  *See Miranda v. Arizona*, 384 U.S. 436, 473-474 (1966) ("Once [these] warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.")  Detective Knoblauch did not testify that petitioner told him he did not want to say anything and he was never questioned about this.

frightened petitioner and led him to tell the detective that he had been after money for drugs.  "I don't know whether I feared I would actually be charged with it [sexual assault] or not but it scared me."(*Id.*., p. 23).  When petitioner wrote out his statement initially,  he did not write the last line.  The detective indicated that this was not consistent with what they had discussed, so petitioner went back and added that he was looking for something to pawn for drugs.  Petitioner further testified that this part of the statement was true but that he only wrote it down because the detective indicated that he should put in what they discussed and because he did not intend to assault the complainant. Petitioner was 31 years old at the time and had a GED.  At the end of the hearing the trial court found that the statement was voluntary.

At the preliminary examination Knoblauch was asked if  he suggested to petitioner that he should write down that his intent was to steal.  The detective answered that, "I said the female's concern that someone's trying to get into the house, with a female alone, she's concerned that someone would be trying to rape and kill her.  He says, 'No, I just wanted to steal stuff.'  I said, 'Well make sure you write that in your statement.'  Which he did." (Preliminary Examination Transcript, pp. 21-22).  He denied that he suggested to petitioner that he had in fact been attempting to take something for drugs, rather:  "I suggested that it might be a better idea than having the woman think that he was going in there to cause her physical harm.  And that's why he indicated I did not intend to cause her physical harm I just wanted to steal her stuff, basically." (Preliminary Examination Transcript, pp. 22).

At trial, Detective Knoblauch testified that he told petitioner that the complainant had feared that  petitioner's intent had been to enter her house to rape or kill her and that petitioner responded that he tried to break in because he wanted money for drugs and that he did not intend to harm the

34

complainant.  The detective asked petitioner to write out a written statement and said that he would

inform the complainant of its contents.

The Michigan Court of Appeals rejected petitioner's claim that Knoblauch's comments made

the statement involuntary:

> Here, defendant contends that the police coerced his statement by telling him that he
> would "be better off" if he admitted that he broke into the house in order to steal to
> get money for drugs. Defendant argues that he was under the impression that if he did
> not make the statement, he would be charged with some form of violent crime.
> However, while defendant asserts that he was coerced into making his statement,
> there is no evidence to support this assertion other than defendant's own testimony.
> "The trial court is in the best position to assess the crucial issue of credibility." Id. at
> 566. Additionally, before defendant made his statement, he signed a document setting
> forth his constitutional rights, and indicated that he understood those rights. There is
> no evidence that defendant was under the influence of any intoxicants or drugs, that
> he was deprived of food or sleep, or that he was injured or physically abused.
> Defendant had been in custody less than twenty-four hours at the time he gave the
> statement, and there is no indication that the police officer's questioning of defendant
> was repeated or prolonged. Defendant was thirty-one years old when he was arrested,
> has a GED education, and is a fourth habitual offender, so he has had extensive
> experience dealing with police. Given the circumstances surrounding defendant's
> waiver of rights and written statement and the trial court's assessment of defendant's
> credibility, we conclude that the trial court did not err in denying defendant's motion
> to suppress his statement.

State Appeal, p.4, 2004 WL 1620849*3.

Respondent argues that there is no evidence that the statement was coerced or otherwise

involuntary.

2.    *Applicable Law.*

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of

involuntary confessions against the accused. *Jackson v. Denno*, 378 U.S. 368, 376 (1964).  Likewise,

"certain interrogation techniques, either in isolation or as applied to the unique characteristics of a

particular suspect, are so offensive to a civilized system of justice that they must be condemned under

35

the Due Process Clause of the Fourteenth Amendment." *Miller v. Fenton*, 474 U.S. 104, 109(1985).

A confession is considered involuntary if 1) the police extorted the confession by means of coercive activity, 2) the coercion in question was sufficient to overbear the will of the accused, and 3) the will of the accused was in fact overborne because of the coercive police activity in question. *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir.1988). *See also, Reck v. Pate*, 367 U.S. 433, 440 (1961). In determining whether the will of the accused was overborne, the court examines the totality of the circumstances. *Withrow v. Williams*, 507 U.S. 680, 688-689 (1993). Factors to weigh include the age, education, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. See *Arizona v. Fulminante,* 499 U.S. 279, 286 (1991); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

The use of coerced confessions is constitutionally unacceptable for two reasons. First, coerced statements may be untrustworthy. *Jackson v. Denno*, 378 U.S. at 385-386. Second, the methods used to extract a coerced confession "offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial system--a system in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth." *Rogers v. Richmond*, 365 U.S.534, 540-541 (1961).

A confession is much more likely to be voluntary when it is given after a person knowingly and voluntarily waives his Miranda rights. As the Supreme Court stated in *Berkemer v. McCarty*, 468 U.S. 420, 433 n. 20 (1984), "[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities

36

adhered to the dictates of Miranda are rare."

While police promises of leniency and threats of prosecution can render a confession involuntary, they do not necessarily do so, particularly if the threat or promise is not illusory.  See e.g. *McCalvin v. Yukins*, 444 F.3d 713, 721(6th Cir. 2006) (state court's finding of voluntariness was reasonable even though the detective convinced defendant to change her story that she hit the victim with her car by accident to an admission that she was trying to scare the victim , by telling defendant that she would not have contact with her children if convicted of first-degree murder:  "We are not prepared to forbid police from conveying to suspects the seriousness of the crime for which they are being investigated....[A]n innocent defendant in the circumstances in our case would have little incentive to render a false confession."); *United States* v. *Johnson*, 351 F.3d 254, 262 (6th Cir. 2003) (although the police threat to charge his half-sister was the crucial motivating factor in Johnson's decision to confess, this did not make the confession involuntary because she could have been prosecuted and she was not charged).

Similarly, the fact that the police induce a confession with false information does not necessarily render the confession involuntary. *See e.g.,Frazier v. Cupp*, 394 U.S. 731, 737-39 (1969) (confession held  voluntary despite a police officer's misrepresentation to the petitioner that an associate had confessed to the crime); *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir.1994) (several misrepresentations by police officers, such as a staged victim identification and a fingerprint that the officers falsely claimed to have matched to the defendant, held not to have overborne the defendant's will).

    3.    *Analysis*

The Michigan Court of Appeals applied the correct legal standard and its conclusion that

petitioner's statement was voluntary was reasonable, viewing the totality of the circumstances. Petitioner was an adult, sufficiently educated, experienced in the criminal justice system, and subjected to no physical pressures or deprivations. The record does not support a conclusion that Knoblauch's comments during interrogation were sufficient to overbear petitioner's will or that they did so, even if petitioner's own testimony is credited (his additional allegations in the petition are not supported in the record). There was no question but that petitioner tried to break into the house and Detective Knoblauch's attempt to determine the seriousness of the intended offense was not improper. His representation to petitioner that the complainant feared that she was going to be raped or injured by an unknown man forcing his way into her house is certainly plausible if not in fact obvious, and while it may have been a ploy to induce petitioner to admit that he intended a larceny, it was not "so offensive to a civilized system of justice that [it] must be condemned." *Miller v. Fenton*, 474 U.S. at 109. Nor is there any danger that petitioner's conviction rests on unreliable evidence since he admitted at the Walker hearing that his statement, including that his intent was to commit a larceny, was true. Petitioner's testimony that he only wrote the last line because Knoblauch told him to include what he had already admitted verbally does nothing to further his claim of coercion.

J.      *Claim VII: Penalizing Exercise of Right to Trial*

Petitioner claims that the trial court increased his sentence because he refused to plead guilty and insisted on a trial in violation of the Due Process Clause.

1.      *Background*

In support of his claim, Petitioner relies on the following statements made by the trial court at sentencing:

38

"And I recognize that, and Mr. McQueeney pointed out, that the plea offer that I had put on the record here was, what, 84 months at one time...[w]as not acceptable.

And now I've had the victim have to relive her experience as a result of your right to your trial and you've had your right to your trial. And I don't think 10 years is enough. The recommendation is 10 years. (Sentencing Transcript, pp. 22-23).

In rejecting this claim, the Michigan Court of Appeals recognized the principle that a defendant should not be penalized for exercising his right to a trial but held that it was required to affirm because the sentence was within the appropriate guidelines range of  Michigan's statutory sentencing guidelines. *See* Mich. Comp. Laws § 769.34 *et seq.*  It did not address the judge's comments.

Respondent argues that petitioner has not sustained his burden of establishing vindictiveness at sentencing.

2.      *Applicable Law*

A sentence that penalizes a defendant for having exercised a constitutional rights would be a patent violation of the Fourteenth Amendment.  *North Carolina v. Pearce,* 395 U.S. at 724.  It is beyond debate that a defendant cannot be punished at sentencing for exercising his constitutional right to plead not guilty and to stand trial, "no matter how overwhelming the evidence of his guilt." *United States v. Derrick*, 519 F.2d 1, 3 (6th Cir.1975)*; see also United States v. Harris*, *supra*.

In *Pearce* the Supreme Court held that where the same judge imposes a greater sentence on retrial after the defendant successfully appeals the first conviction, a presumption arises that the sentence is vindictive and the reasons for the increase must appear in the record. *Id.*  However in *Alabama v. Smith*, 490 U.S. 794, 795 (1989) the Supreme Court held "that no presumption of vindictiveness arises when the first sentence was based upon a guilty plea, and the second sentence

39

follows a trial."   The Court observed that a sentencing judge has considerably more relevant sentencing information after trial than is generally available when the defendant pleads guilty. During a trial, "the judge may gather a fuller appreciation of the nature and extent of the crimes charged" and gain "insights into [the defendant's] moral character and suitability for rehabilitation." *Id.* at 801. In addition, "after trial, the factors that may have indicated leniency as consideration for the guilty plea are no longer present." *Id.* Thus, concluded the court, it is not reasonable to presume that a longer sentence imposed after trial was motivated by unconstitutional vindictiveness. Where there is no reasonable likelihood that the sentence is the product of actual vindictiveness on the part of the sentencing authority, the burden is on the defendant to prove actual vindictiveness in the sentencing decision. *Id.* at 799.

The rationale and holding of *Smith* apply equally when a defendant is sentenced after conviction at trial following his decision to reject a plea bargain and plead not guilty. *See e.g., Williams v. Jones*, 231 F.Supp.2d 586 (E.D. Mich. 2002) (Lawson, J.).   The refusal to presume vindictiveness in this context is likewise consistent with the Supreme Court's plea bargaining decisions, which make it clear that a state is free to encourage guilty pleas by offering a defendant substantial benefits or by threatening him with more severe punishment should a negotiated plea be refused. *Corbitt v. New Jersey*, 439 U.S. 212 (1978); *Bordenkircher v. Hayes*, 434 U.S. 357 (1978).

    3.    *Analysis*

The Michigan Court of Appeals decision to affirm the sentence because it was within the appropriate range under the Michigan sentencing guidelines did not resolve the constitutional challenge.   The question is therefore whether the result was contrary to or an unreasonable application of Supreme Court precedent.   Petitioner has not met his burden of proving that the

sentence was based in part on his exercise of his right to a trial.  The judge's comment was a response to defense counsel's argument for a minimum sentence no greater than that in the plea offer.  The trial court reviewed petitioner's past record and his failures at drug rehabilitation and his  victimization of society to support his drug habit in explaining his rejection of the sentence that was offered.  After the trial the judge would have had a better understanding of the impact the offense had on the complainant.  The state was free to offer petitioner an inducement  for pleading guilty  but once the plea was rejected  the judge was free to formulate the sentence he believed appropriate. Although the sentence was substantially greater than the plea offer there is no presumption of vindictiveness and the judge's comments do not prove actual vindictiveness[7].

K.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of

---

[7]  Neither do defense counsel's comments in the letter previously discussed.  In the letter counsel agrees with petitioner that the judge did penalize him for going to trial.  Counsel relies in part on his recollection that at the close of trial the judge commented to counsel that petitioner should have taken the plea because it was a good offer.  This comment, even if it were part of the record, does not show actual vindictiveness, that is, that the judge intended to punish petitioner for having gone to trial.  A more reasonable interpretation is that having heard the entire case the judge believed that the sentence that had been offered was generous.

any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sulliavan*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives

PAUL J. KOMIVES

UNITED STATES MAGISTRATE JUDGE

Dated: July 27, 2006

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on July 27, 2006.

s/Eddrey Butts
Case Manager

42